**KENNETH ROSELLINI (6047)**
**ATTORNEY AT LAW**
636A Van Houten Avenue
Clifton, New Jersey 07013
 (973) 998-8375 Fax (973) 998-8376
*Attorney for Plaintiff Kevin Lewis*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| KEVIN LEWIS, <br><br>     Plaintiff, <br><br>             v. <br><br> CARMEN DIAZ-PETTI, in her official capacity as Director of DCP&P/Assistant Commissioner of the New Jersey Department of Children and Families ("DCF"), CHRISTINE NORBUT BEYER, in her official capacity as the Commissioner of DCF, RICHARD J. NOCELLA, Presiding Judge, New Jersey Superior Court, Family Division, Burlington County, in his official capacity, EDWARD W. HOFFMAN, Judge, New Jersey Superior Court, Family Division, Burlington County, in his official capacity, MARK P. TARANTINO, Judge, New Jersey Superior Court, Family Division, Burlington County, in his official capacity, GERARD BRELAND, Judge, New Jersey Superior Court, Family Division, Burlington County, in his official capacity, JAMES FERRELLI, Judge, New Jersey Superior Court, Family Division, Burlington County, in his official capacity, HON. GLENN A. GRANT, J.A.D, in his official capacity, DAVID TANG, in his official capacity, LAURALIE LEWIS,  in her individual capacity <br><br>     Defendants. | CIVIL ACTION <br><br> Case No. : <br><br>    **JURY TRIAL DEMANDED** <br><br><br> **COMPLAINT and JURY DEMAND** |

Plaintiff Kevin Lewis, in the above-captioned matter, by and through his counsel of record, for his causes of action against Defendants, states as follows:

## PARTIES

1.     Plaintiff, Kevin Lewis (referred to at times as "Mr. Lewis") is domiciled in the State of Jersey, residing in Burlington County, New Jersey at times relevant to this Complaint and is the father of three children who were subject to the jurisdiction of the New Jersey Superior Court, Chancery Division, Family Part ("New Jersey Family Court" or "Family Court"), one of which is still a minor over which the New Jersey Family Court continues to exercise jurisdiction.

2.     The Defendant, Carmen Diaz-Petti ("Diaz-Petti") is the current Director of the New Jersey Division of Child Protection & Permanency ("DCP&P") and is liable for her actions in her official capacity done under color of state law.  This Defendant is entrusted to protect the Constitutional rights of those she encounters and at all times relevant hereto was acting within the scope of her duties and authority, under color or title of state law supervised or controlled one or more of the Defendants herein, or acted in concert with one or more of the other individual Defendants in the performance or conduct of their actions.

3.     The Defendant, Christine Norbut Beyer ("Beyer") is the current Commissioner of the Department of Children and Families and is liable for her actions in her official capacity done under color of state law.  This Defendant is

entrusted to protect the Constitutional rights of those she encounters and at all times relevant hereto was acting within the scope of her duties and authority, under color or title of state law supervised or controlled one or more of the Defendants herein, or acted in concert with one or more of the other individual Defendants in the performance or conduct of their actions.

4.      Defendant Glenn A. Grant, J.A.D. (hereinafter referred to at times as "Defendant" or "Grant"), is the Acting Administrative Director of the Courts of the State of New Jersey, is sued in his official capacity, and is liable for his actions done under color of state law. This Defendant is entrusted to protect the Constitutional rights of those he encounters and at all times relevant hereto was acting within the scope of his duties and authority, under color or title of state law supervised or controlled one or more of the Defendants herein, or acted in concert with one or more of the Defendants.

5.      Defendant, David Tang (hereinafter referred to at times as "Defendant" or "Tang"), is the Chief of the Family Practice Division within the Administrative Director of the Courts of the State of New Jersey, and is sued in his official capacity, and is liable for his actions done under color of state law. This Defendant is entrusted to protect the Constitutional rights of those he encounters and at all times relevant hereto was acting within the scope of his duties and authority, under color or title of state law supervised or controlled one or more of

the Defendants herein, or acted in concert with one or more of the Defendants.

6.     Defendant, Richard J. Nocella (hereinafter referred to at times as "Defendant" or "Nocella"), is the Presiding Judge, New Jersey Superior Court, Family Division, Burlington County, and is sued in his official capacity, and is liable for his actions done under color of state law. This Defendant is entrusted to protect the Constitutional rights of those he encounters and at all times relevant hereto was acting within the scope of his duties and authority, under color or title of state law supervised or controlled one or more of the Defendants herein, or acted in concert with one or more of the Defendants.

7.     Defendant, Edward W. Hoffman (hereinafter referred to at times as "Defendant" or "Hoffman"), is a Judge in the New Jersey Superior Court, Family Division, Burlington County, and is sued in his official capacity, and is liable for his actions done under color of state law. This Defendant is entrusted to protect the Constitutional rights of those he encounters and at all times relevant hereto was acting within the scope of his duties and authority, under color or title of state law supervised or controlled one or more of the Defendants herein, or acted in concert with one or more of the Defendants.

8.     Defendant, Mark Tarantino (hereinafter referred to at times as "Defendant" or "Tarantino"), is a Judge in the New Jersey Superior Court, Family Division, Burlington County, and is sued in his official capacity, and is liable for

his actions done under color of state law. This Defendant is entrusted to protect the Constitutional rights of those he encounters and at all times relevant hereto was acting within the scope of his duties and authority, under color or title of state law supervised or controlled one or more of the Defendants herein, or acted in concert with one or more of the Defendants.

9.      Defendant, Gerard Breland (hereinafter referred to at times as "Defendant" or "Breland"), is a Judge in the New Jersey Superior Court, Family Division, Burlington County, and is sued in his official capacity, and is liable for his actions done under color of state law. This Defendant is entrusted to protect the Constitutional rights of those he encounters and at all times relevant hereto was acting within the scope of his duties and authority, under color or title of state law supervised or controlled one or more of the Defendants herein, or acted in concert with one or more of the Defendants.

10.     Defendant, James Ferrelli (hereinafter referred to at times as "Defendant" or "Ferrelli"), is a Judge in the New Jersey Superior Court, Family Division, Burlington County, and is sued in his official capacity, and is liable for his actions done under color of state law. This Defendant is entrusted to protect the Constitutional rights of those he encounters and at all times relevant hereto was acting within the scope of his duties and authority, under color or title of state law supervised or controlled one or more of the Defendants herein, or acted in concert

with one or more of the Defendants.

11.     The Defendant Lauralie Lewis (hereinafter referred to at times as "Defendant" or "Lauralie Lewis"), individually, acted with malicious abuse of process in a manner not contemplated by law by fabricating evidence and manipulating DCP&P proceedings and investigations, without a basis in law, in an attempt obtain full custody of Plaintiff's children through abuse of process in a manner not contemplated by law.

## JURISDICTION AND VENUE

12.     This is a civil action brought against the Defendants by the Plaintiff, seeking a judgment to enforce and declare his rights under the First, Fourth, Ninth and Fourteenth Amendments to the Constitution for the United States of America pursuant to 42 U.S.C. §1983 and 28 U.S.C. §§2201-2202 and §204(a) of the federal Civil Rights Act of 1964 (Civil Rights Act), and seeking a judgment against those responsible for abuse of process, a common law cause of action in the State of New Jersey.

13.     The Court has jurisdiction over this action, which presents a federal question under Article III, §2 of the Constitution for the United States of America, pursuant to 28 U.S.C. §1331 and 2201-2202, with supplemental jurisdiction under 28 U.S.C. §1367 over Plaintiff's state law claim of abuse of process.

14.     Venue is proper in this Court under 28 U.S.C. §1391, because many

of the parties reside in this District, and all of the events giving rise to this claim

occurred in this District.

## FACTUAL BACKGROUND

15.     Plaintiff Kevin Lewis, an African-American, is the loving parent and

legal guardian of the minor children L.L., KaL. and KeL. ("Plaintiff's Children").

16.     On May 16, 2016, DCP&P caseworker Rosemary Ortiz ("Ortiz")

arrived at the home of Plaintiff unannounced and without possessing any

substantive evidence that Plaintiff's Children had been abused or neglected or were

in imminent danger of being abused and neglected.

17.     Ortiz notified Plaintiff that a complaint had been made to DCP&P

about Plaintiff.

18.     Plaintiff agreed to speak to Ortiz and allowed Ortiz to see his children

inside the home at Ortiz's request.

19.     Plaintiff further informed Ortiz that the children had a prescheduled

tutoring session which they had to attend.

20.     Plaintiff advised Ortiz that before he would consent to Ortiz speaking

to his children, he wished to consult with an attorney.

21.     On May 17, 2016, Plaintiff arrived at his children's school to pick

them up after classes were done, as was his regular routine, and was met by local

police officers whom informed Plaintiff that his children had been removed from

his custody by DCP&P for their safety.

22.    Plaintiff was then informed by Ortiz that that the children were in DCP&P's custody and that she would not disclose the whereabouts of the children because they were allegedly all in fear for their safety.

23.    In fact, the children were placed by DCP&P with Plaintiff's ex-wife, Defendant Lauralie Lewis, who had made false allegations of abuse.

24.    In fact, Lauralie Lewis coerced and unduly influenced the children into making false statements to ignite DCP&P's investigation of Plaintiff, statements which would have been revealed as false if DCP&P had performed a legitimate investigation and which did later prove to be false upon trial.

25.    Plaintiff later learned that the false allegations included alleged physical abuse such as hitting the children with a belt or pulling the children's hair, which were completely fabricated, and for which there was absolutely no physical evidence.

26.    Ortiz then further informed Plaintiff that she had obtained a statement from Plaintiff's ex-wife concerning the care of the children, and that she no longer needed anything from Plaintiff.

27.    As a result of DCP&P's unlawful removal of Plaintiff's children from his custody on May 17, 2016, Plaintiff was unable to have any contact with his children whatsoever for a period of approximately ninety-days.

28.    DCP&P instituted legal proceedings against the Plaintiff in the Superior Court of the State of New Jersey, alleging that Plaintiff abused and/or neglected his children.

29.    When Plaintiff was given a full fact finding hearing, it was proved that there was no basis for the allegations, and the abuse and neglect allegations against Plaintiff were dismissed by the court by order of June 30, 2017.

30.    The only experts to testify during these proceedings proved that Plaintiff did not pose any risk of harm to his children, and that Plaintiff should have unsupervised parenting time with his children.

31.    Plaintiff filed multiple motions before the court for approximately over 100 visitations that the children were never brought to, and never attended.

32.    Neither Judge Hoffman, Judge Tarantino, Judge Breland, nor Judge Ferrelli, took any action to enforce visitation rights on Plaintiff's numerous applications.

33.    When Plaintiff's contact with his children was finally restored, in August of 2016, it was limited to 90 minutes DCP&P supervised visitation for only once a week.

34.    When ultimately DCP&P dismissed its action against Plaintiff, the Family Court continued to exercise jurisdiction over the Plaintiff and his relationship with his ex-wife and his children under matrimonial docket, "FM"

35.     Despite the fact that the Plaintiff posed no risk to his children, and expert evidence proved by clear and convincing evidence that Plaintiff should have unsupervised visits with his children, the Family Court refused to expand the rights of visitation of Plaintiff beyond 90 minutes supervised visitation for only once a week, despite Plaintiff's numerous meritorious applications to the Family Court for increased visitation.

36.     In fact, the Family Court also refused to enforce Plaintiff's rights of visitation at all, and despite Plaintiff's numerous applications to the Family Court, the Family Court refused to enforce visitation rights of the Plaintiff, causing him to go years without any visits with his children.

37.     This refusal to enforce Plaintiff's rights of visitation occurred for over four years, which includes a period of three consecutive years with no contact whatsoever; no phone, no letters, no birthdays, or holidays.

38.     This failure to enforce rights of visitation constitutes parental alienation, and in May of 2022 an objective child psychological expert submitted a report to the Family Court finding that the Family Court's actions had improperly caused parental alienation, a violation of Plaintiff's Constitutional Rights.

39.     The report also indicates that all three children had been subjected to parental alienation by the mother against the father.

40.     It is because of the Family Court's improper action, and the mother's

intentional parental alienation that was facilitated by the Family Court, that Mr. Lewis's two children are now lost to him forever.

41.    Two of his children have during the course of these proceedings reached the age of majority, but one of his children is still a minor, and the Family Court continues to arbitrarily and capriciously refuse to enforce Plaintiff's rights to visit his child while also refusing to increase his rights of visitation.

42.    During the course of the aforementioned proceedings, DCP&P and Lauralie Lewis continuously attempted and attempt to fabricate evidence to prevent Plaintiff from attending his visits with his children.

43.    For example, on a visit by Plaintiff with his children in September 2016, all three of the Plaintiff's children disclosed to him that both caseworker Peters and Lauralie Lewis had threatened all of them on multiple occasions that "they will soon be questioned by court personnel and if they say they want to live with their father they all will be thrown in foster care".

44.    In fact, Lauralie Lewis admitted in court under oath that she had made such statements to the children.

45.    In Family Court proceedings, visitation rights as a matter of due process must be granted to the non-custodial except only in those exceptional cases where it clearly and convincingly appears that the granting of visitation will cause physical or emotional harm to the children or where it is demonstrated that the

parent is unfit.

46. Defendant Judge Tarantino received evidence by way of a filed motion (September 2016) indicating corruption, tampering, and intimidating three witnesses, Plaintiff's children, ages 9, 14 and 16, who had provided evidence by way of their Father that they had been threatened by the DCP&P Caseworker, Jasmine Peters, and their Mother, Ms. Lewis, specifically with "you will soon be questioned by court personal and if you say you want to live with your father you will be thrown in foster care" as a form of retaliation to them and harm.

47. The information was provided to Judge Tarantino again by way of a filed motion requesting an immediate dismissal of the Title 9 (child abuse and neglect section of New Jersey Statutes) because of corruption, tampering and the inability to get a fair trial.  In this motion it was requested that Judge Tarantino immediately order the Minor Children be brought before him so that he could question them on this very serious violation of law and threat.

48. Instead the family court continued to violate the Constitutional Rights of the Plaintiff, and continuously denied the Plaintiff the right to obtain transcripts and audio recording of the testimony presented in court.

49.  Judge Tarantino specifically ordered that the Plaintiff could not have any transcripts or any audio recordings at all.

50. Judges Breland and Ferrelli ordered that transcripts could be provided

to Plaintiff, but the administrative office of the courts would not provide them.

51.     This continuous denial of transcripts lasted for four consecutive years.

52.     When the Plaintiff obtained access to court audio he discovered that the courtroom testimony surrounding Miss Lewis's admission that she threatened the children and the children's admission on the record that they have been threatened had been altered and changed.

53.     Judge Tarantino refused to interview the Minor Children, and refused to investigate the allegations of corruption, tampering and intimidation that were brought before him, and refused to take any action or create any orders prohibiting threats going forward.

54.     Judge Tarantino did nothing to protect the safety of the children and, in essence, left them in harm's way to be a continual target of threats and abuse by DCP&P Caseworker, Jasmine Peters, and Ms. Lewis.

55.     Judge Tarantino refused to take any action to protect the rights and due process of Plaintiff and insure that Plaintiff would get a fair trial.

56.     Judge Tarantino's actions and refusal to even look into the very serious allegations of corruption, tampering and intimidating three witnesses who were children, and crying out for help, show extreme bias and unfairness toward Plaintiff.

57.     Judge Tarantino, despite having a filed motion indicating all the

above, never held a hearing on the matter, never acted on the matter, never took any effort to protect the children who are crying out for help because they were being abused by DCP&P Caseworker Jasmine Peters and Ms. Lewis.

58.    On December 12, 2016, Judge Tarantino intentionally provided false information to Plaintiff's current attorney in Family Court, David Garnes, when he was questioned about the status of the motion that was filed regarding threats, corruption, tampering, and intimidation of the children to provide false testimony to the court.

59.    Judge Tarantino on the record advised Plaintiff's Chancery Division Family Part counsel that the motion had been handled, and that there was a hearing on September 29, 2016. This was an intentionally false and misleading statement that Judge Tarantino made in order to mislead Plaintiff's counsel and attempt to further conceal the matter.

60.    In February 2017, there was testimony under oath and in open court by the children and Ms. Lewis.  The testimony revealed by one of the children confirmed that they had indeed been threatened as previously reported to the Family Court.

61.    In addition there was testimony under oath and in open court by Ms. Lewis who admitted that she did threaten the children as Plaintiff had previously reported to the Family Court.

62.     Despite these admissions by the children and Ms. Lewis under oath and in open court, Judge Tarantino took no action to prevent further threats and issued no orders prohibiting future threats, and thus, allowed the threats to continue and the children's safety to be placed in harm's way.

63.     On one of these applications, before the Honorable Mark Tarantino, Judge of the Superior Court of New Jersey, the Plaintiff's application was never heard, and when Plaintiff sought the court record of when he raised the issue before the court that the motion was still pending and unheard, the Family Court failed or refused to provide an accurate transcript and audio recording of that court appearance.

64.     Judge Gerard Breland, was very biased against Plaintiff and, upon information and belief, retaliated against Plaintiff because he filed an ethics complaint against Judge Mark Tarantino.

65.     In addition, Judge Breland stated on the record that he had talk to Judge Mark Tarantino, and falsely indicated that Plaintiff never asked to have his children evaluated by an expert.

66.     Upon information and belief, Plaintiff asserts this statement was in retaliation for his ethics complaint and complaint about racial discrimination against Judge Mark Tarantino.

67.     Judge Breland permitted Plaintiff's children to be present in the

courtroom while DCP&P and the mother were stating and making a multitude of false allegations, but would not allow Plaintiff to put on the record the fact that the children were threatened by the caseworker and that their mother admitted on the record that she threatened the children.

68.    Judge Breland painted a negative picture of Plaintiff in front of his children, but would not allow him or Plaintiff's counsel to report that information on the record while the children were present.

69.    Judge Breland continued to be biased against Plaintiff, and would not take any action when Plaintiff brought to his attention that the children were not being brought to him for required visits or for reunification therapy.

70.    Judge Breland continuously refused to enforce Plaintiff's rights of custody and visitation with his children despite numerous applications to the Family Court, and the fact that Plaintiff did not pose a risk to his children and was a fit parent.

71.    Judge Breland was provided with a letter from a court appointed therapist that conducted an investigation finding that the Plaintiff does not pose any threat to his children or to himself, and that he is not suffering from depression.

72.    Without any basis in law or fact, Judge Breland determined that the therapist was biased, and arbitrarily and capriciously refused to consider the

therapist' findings and recommendations.

73.     Upon the closure of DCP&P case against Plaintiff, which ended in February 2019. Plaintiff filed a motion soon thereafter in Family Court requesting visitation and parenting time as he had not been given any by the DCP&P or Judge Breland.

74.     Upon the filing of the motion, Judge Ferrelli improperly claimed that since a previous family court order unrelated to parenting time was being appealed, he was unable to take any action or allow Plaintiff any visitation time.

75.     Judge Ferrelli continued to refuse to enforce visitation and Plaintiff continued to have no contact with his children.

76.     Plaintiff renewed a motion to enforce visitation in February 2020 when the issues concerning possible Appellate Jurisdiction over visitation became moot.

77.     While Judge Ferrelli ruled in Plaintiff's favor that he had rights of visitation, Judge Ferrelli continued to refuse to take any action to enforce those rights.

78.     After a year of litigation and substantial resources expended, Judge Ferrelli reversed his previous decision on visitation without a basis in law or fact.

79.     Judge Ferrelli never enforced or held accountable Lauralie Lewis for refusing to bring the children to reunification therapy, for preventing the children

from speaking to Plaintiff over the telephone, and providing the court with fictitious and false telephone numbers.

80.    Plaintiff's rights to visitation to two of his children were never restored and they have since reached the age of majority after which the Family Court has no jurisdiction.

81.    Despite the fact that Plaintiff had been cleared of any and all allegations of abuse or neglect, Judge Ferrelli continued to discriminate against Plaintiff and arbitrarily and capriciously deny Plaintiff rights of due process.

82.    In January 2021 Plaintiff's case was transferred to Judge Hoffman.

83.    Judge Hoffman continued the conduct of the previous judges and refused to enforce Plaintiff's rights with respect to his children.

84.    Judge Hoffman ordered therapy at the Plaintiff's expense despite the fact that Lauralie Lewis had disrupted three previous therapy sessions and has been in non-compliance with previous court orders.

85.    Defendant Judge Edward W. Hoffman, under the oversight of Presiding Judge Richard J. Nocella, has continuously refused to enforce Plaintiff's rights of custody and visitation with his children despite Plaintiff's numerous meritorious applications to the Family Court, the fact that Plaintiff poses no risk of harm to the children, and that he is in fact a fit parent.

86.    Defendants' unconstitutional actions were done in retaliation for

Plaintiff's assertion of his fundamental rights as a parent, and as invidious discrimination against Plaintiff due to his race.

## FIRST COUNT

### Declaratory Relief 28 U.S.C. §2201

87.     Plaintiff repeats and re-alleges every allegation set forth above as if recounted at length herein.

88.     A declaratory judgment construing and determining the constitutionality of the rules promulgated and procedures employed by the New Jersey Department of Children & Families, Division of Child Protection & Permanency, Superior Court of the State of New Jersey, Chancery Division, Family Part will serve useful purpose in clarifying and settling legal relations in issue, and will terminate and afford relief from uncertainty, insecurity, and controversy giving rise to proceeding.

89.     Plaintiff has Article III standing as there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

90.     Plaintiff is not challenging state court judgments, but the underlying policy that governed those judgments.

**WHEREFORE**, Plaintiff, Kevin Lewis respectfully requests that the Court enter judgment in his favor against Defendants, Diaz-Petti, Christine Norbut Beyer, Glenn A. Grant, J.A.D., David Tang, Richard J. Nocella, Mark Tarantino, Gerard Breland, James Ferrelli, and Edward W. Hoffman, and award the following relief:

A.      Declaring as a matter of right and due process under the First, Fourth, Ninth and Fourteenth Amendments to the Constitution for the United States of America, that the state, including its judicial branch, may not institute arbitrary and capricious supervised child visitation restrictions upon a parent when there is no credible evidence of imminent or actual abuse and neglect of that child by the parent.

B.      Declaring as a matter of right and due process under the First, Fourth, Ninth and Fourteenth Amendments to the Constitution for the United States of America, that the state, has no interest in investigating and litigating against parents, in state court or otherwise, when there is no credible evidence of imminent or actual abuse and neglect of that child by the parent.

C.      Declaring as a matter of right and due process under the First, Fourth, Ninth and Fourteenth Amendments to the Constitution for the United States of America, that a parent has a Constitutional Right to a timely hearing with a full and complete record upon the application to a family court to assert their rights of visitation with their children.

## SECOND COUNT

### Claim Under 42 U.S.C. §1983

91.     Plaintiff repeats and re-alleges every allegation set forth above as if recounted at length herein.

92.     The Defendants, Carmen Diaz-Petti and Christine Norbut Beyer are charged with the responsibility and duty to protect and serve the public by properly hiring, supervising, training, disciplining and controlling child protective service workers under their command.

93.     This responsibility includes promulgation and enforcement of rules and regulations regarding avoidance of threats and abuse of process in the investigation of allegations of child abuse.

94.     On information and belief, Defendants Carmen Diaz-Petti and Christine Norbut Beyer, failed to promulgate adequate rules and regulations regarding avoidance of threats and abuse of process in the investigation of allegations of child abuse and further failed to instruct, discipline and train in the appropriate methods for handling and investigating allegations of child abuse without resorting to threats and abuse of process.

95.     On information and belief, Defendants Carmen Diaz-Petti and Christine Norbut Beyer, established through tacit authorization or explicit

instruction a policy or custom of allowing DCP&P workers to commit abuse of process. That policy was enacted and enforced with deliberate indifference to the constitutional rights of Plaintiff.

96.     Plaintiff has been harmed by such policy and is at risk of further harm from such policy.

97.     The Defendants Glenn A. Grant, J.A.D., David Tang, Richard J. Nocella, and Edward Hoffman are charged with the responsibility and duty to abide by Constitutional Due Process of Law in family court proceedings involving the rights of parents to visit with their children.

98.     This responsibility includes implementing judicial proceedings which are determined based upon the rule of law and competent evidence with a full and fair opportunity to be heard in a court of record, and not which are determined arbitrary and capriciously.

99.     These Defendants have failed to abide by and implement such proceedings as a matter of due process as to the Plaintiff and those similarly situated to the Plaintiff.

100.   Plaintiff is not challenging state court judgments, but the underlying policy that governed those judgments.

101.   Plaintiff has been harmed by such policy and is at risk of further harm from such policy.

**WHEREFORE**, Plaintiff, respectfully demands judgment against the Defendants Carmen Diaz-Petti, Christine Norbut Beyer, Glenn A. Grant, J.A.D., David Tang, Richard J. Nocella, Mark Tarantino, Gerard Breland, James Ferrelli, and Edward W. Hoffman, jointly and severally:

A) For Injunctive Relief in the form of an order requiring that the explicit instruction and policy be made requiring DCP&P workers to refrain from abuse of process.

B) For Injunctive Relief in the form of an order requiring the Superior Court of the State to institute ruled of procedure to guarantee that parents receive fair and timely hearings concerning their rights of visitation with their children consistent with the due process requirements of the Fourteenth Amendment.

## THIRD COUNT

### Claim for Malicious Abuse of Process

102.   Plaintiff repeats and re-alleges every allegation set forth above as if recounted at length herein.

103.   Abuse of Process is a common law tort in the State of New Jersey which is defined as a cause of action from one party misusing the regularly issued court process, not justified by the underlining legal action.

104.   Defendant Lauralie Lewis has acted improperly in Family Court proceedings and appellate proceedings in an attempt to intimidate Plaintiff into refraining from advocating for his rights of visitation with his children, through fabrication of evidence, false allegations, and motion practice without a basis in law and in a manner not contemplated by law.

**WHEREFORE**, Plaintiff Kevin Lewis demands judgment against Defendant Lauralie Lewis, for compensatory damages to be determined at trial, and punitive damages to be determined at trial, plus interest, and attorney, costs of suit, and such other and further relief the court deems equitable and just.


## ATTORNEY'S FEES

105.   Plaintiff incorporates by reference the allegations contained in paragraphs above, as though fully set forth here.

106.   As a result of Defendants' actions as alleged in this complaint, Plaintiff has been required to retain the service of attorneys and are entitled to a reasonable amount for attorney's fees pursuant to 42 U.S.C.A. §1988 for those violations covered by the Civil Rights Act.

## JURY DEMAND AND DESIGNATION OF PLACE OF TRIAL

Plaintiff demands that this matter be tried to a jury of twelve in the United States District Court for the District of New Jersey.

Respectfully submitted,

Dated:    May 28, 2022

KENNETH ROSELLINI, ESQ. (6047)
Attorney at Law

## TRIAL COUNSEL DESIGNATION

Kenneth Rosellini, Esq. is hereby designated trial counsel in this matter.