### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

---

KEVIN LEWIS

        *Plaintiff,*

      v.

CARMEN DIAZ-PETTI in her
official capacity as Director
of DCP&P/Assistant
Commissioner of the New
Jersey Department of Children
and Families (DCF); CHRISTINE
NORBUT BEYER in her official
capacity as the Commissioner
of DCF; RICHARD J. NOCELLA
Presiding Judge, New Jersey
Superior Court, Family
Division, Burlington County,
in his official capacity;
EDWARD W. HOFFMAN Judge, New
Jersey Superior Court, Family
Division, Burlington County,
in his official capacity;
MARK P. TARANTINO Judge, New
Jersey Superior Court, Family
Division, Burlington County,
in his official capacity;
GERARD BRELAND Judge, New
Jersey Superior Court, Family
Division, Burlington County,
in his official capacity;
JAMES FERRELLI Judge, New
Jersey Superior Court, Family
Division, Burlington County,
in his official capacity;
HON. GLENN A. GRANT J.A.D, in
his official capacity; DAVID
TANG in his official
capacity; LAURALIE LEWIS
in her individual capacity

        *Defendants.*

No. 1:22-cv-03242 (NLH-MJS)

**OPINION**

---

**<u>APPEARANCES</u>:**

Kenneth Rosellini, Esq.
636A Van Houten Avenue
Clifton, NJ 07013

  *Attorney for Plaintiff*

Jae K. Shim, Esq.
New Jersey Office of the Attorney General
Tort Litigation
25 Market Street
Trenton, NJ 08625

  *Attorney for Defendants Carmen Diaz-Petti*
  *and Christine Norbut Beyer*

Justine M. Longa, Esq.
New Jersey Office of the Attorney General
Department of Law and Public Safety, Division of Law
25 Market Street
P.O. Box 116
Trenton, NJ 08625

Robert J. McGuire, Esq.
New Jersey Attorney General
25 Market Street
P.O. Box 116
Trenton, NJ 08625

   *Attorneys for Defendants*
   *Richard J. Nocella, Edward W. Hoffman,*
   *Mark P. Tarantino, Gerard Breland;*
   *James Ferrelli, Hon. Glenn A. Grant,*
   *and David Tang*

Richard M Flynn, Esq.
Flynn & Associates
439 Monmouth Street
Gloucester City, NJ 08030

   *Attorney for Defendant*
   *Lauralie Lewis*

**HILLMAN**, District Judge

This matter involves a dispute between Plaintiff and his ex-wife over the custody of their three children.  This is the third federal lawsuit Plaintiff has filed in relation to the custody matter.  Currently pending before the court is Hon. Richard J. Nocella, P.J.S.C., Hon. Edward W. Hoffman, J.S.C., Hon. Mark P. Tarantino, J.S.C., Hon. Gerard Breland, J.S.C., Hon. James Ferrelli, J.S.C., Hon. Glenn A. Grant, J.A.D., and David Tang's ("Judiciary Defendants") Motion to Dismiss Plaintiff's Complaint (ECF No. 17).  For the reasons that follow, the Motion will be granted and the claims against the Judiciary Defendants dismissed with prejudice.

**BACKGROUND**

As referenced above, this is not the first time Plaintiff has raised issues regarding his custody dispute in this Court. In 2018, Plaintiff presented claims under 42 U.S.C. § 1983, the New Jersey Civil Rights Act, and a common law claim of Malicious Abuse of Process, all relating to a decision by the New Jersey Division of Child Protection and Permanency ("DCP&P") to take custody of his three children and award it to Plaintiff's ex-wife, Defendant Lauralie Ingram Lewis.  Upon consideration of Defendant Commissioner Christine Norbut Beyer and Defendant Assistant Commissioner Carmen Diaz-Petti's joint Motion to Dismiss, this Court determined the Younger abstention doctrine

prohibited it from presiding over the claims until the parallel state court proceedings had been completed.  As such, Plaintiff's Complaint was dismissed.  Lewis v. Diaz-Petti, Civil No. 18-9387, 2019 U.S. Dist. LEXIS 69967, at *15-16 (D.N.J. April 25, 2019).

In 2021, Plaintiff filed another federal Complaint alleging additional facts pertaining to the original custody dispute and similarly alleging violations of 42 U.S.C. § 1983 and the New Jersey Civil Rights Act, as well as a claim for Malicious Abuse of Process against Defendant Lauralie Ingram Lewis.  In assessing four motions to dismiss and one motion for judgment on the pleadings by the various defendants, this Court determined a two-year statute of limitations barred all of Plaintiff's claims.  Lewis v. N.J. Dep't of Child. & Fams., the Div. of Child Prot. & Permanency, No. 1:21-cv-01671, 2022 U.S. Dist. LEXIS 150970 (Aug. 23, 2022); Lewis v. N.J. Dep't of Children & Families, No. 1:21-cv-01671, 2022 U.S. Dist. LEXIS 13991 (Jan. 26, 2022).  Said matter is currently pending on appeal before the Third Circuit.  Lewis v. New Jersey Department of Children and Families, No. 22-2792.[1]

Now before the court, is Plaintiff's third federal Complaint, in which he again alleges facts pertaining to the

---

[1]   As of this date, briefing in the appellate matter remains ongoing and no date has been set for argument.

original custody dispute and asserts violations of 42 U.S.C. §
1983 and the New Jersey Civil Rights Act, as well as a claim for
Malicious Abuse of Process against Defendant Lauralie Ingram
Lewis.  Although several of the same entities/Defendants are
named as in the previous two suits, Plaintiff has now included
various judges and court officials for their allegedly improper
handling of his case in State court.

Specifically, Plaintiff alleges that subsequent to his
children being removed from him on May 17, 2016, legal
proceedings were instituted in the Superior Court of New Jersey,
alleging he abused and/or neglected his children.  (Compl. ¶¶
27-28.)  After a hearing, the court ruled in Plaintiff's favor
and the charges were dismissed on June 30, 2017. (Compl. ¶ 29.)
Plaintiff claims he filed multiple motions concerning more than
one hundred (100) visitations that never came to fruition
because the children were never brought to him.  (Compl. ¶ 31.)
He further claims neither Judge Hoffman, Judge Tarantino, Judge
Breland, nor Judge Ferrelli, took any action to enforce
visitation rights on Plaintiff's numerous applications, despite
their continued jurisdiction to do so under matrimonial docket
"FM". (Compl. ¶¶ 32, 34.)  Allegedly ignoring expert evidence
that proved by clear and convincing evidence Plaintiff should
have unsupervised visits with his children and the court's
finding that Plaintiff posed no risk to his children, Plaintiff

alleges the Family Court refused to expand Plaintiff's visitation rights beyond weekly 90-minute supervised visits. (Compl. ¶ 35.)

Because the Family Court refused to enforce Plaintiff's visitation rights, he claims he went three (3) consecutive years without any visits or contact, thereby resulting in parental alienation.  (Compl. ¶¶ 36-38.)  Although two of Plaintiff's children have now reached the age of majority, Plaintiff alleges one of his children is still a minor, and the Family Court continues to arbitrarily and capriciously refuse to enforce Plaintiff's rights to visit his child while also refusing to increase his rights of visitation. (Compl. ¶ 41.)

With specific regard to the Family Court judges, it is alleged Judge Mark Tarantino: improperly denied a motion to immediately dismiss the Title 9 neglect charges; ordered that Plaintiff could not have transcripts or audio recordings; refused to interview Plaintiff's minor children or otherwise investigate allegations of corruption, tampering and intimidation that were brought before him; did nothing to protect the safety of the children by permitting them to continue to have contact with DCP&P Caseworker Peters and Plaintiff's ex-wife; and, provided Plaintiff's counsel with false information about the status of one of Plaintiff's motions.   (Compl. ¶¶ 47, 49, 51, 53-59, 62-63.)

6

It is alleged Judge Gerard Breland: was biased against Plaintiff and retaliated against him because he filed an ethics complaint against Judge Tarantino; said he needed to talk to Judge Tarantino regarding the case; falsely indicated Plaintiff never asked to have his children evaluated by an expert; permitted the children to remain in the courtroom while their mother provided allegedly false testimony but refused to allow Plaintiff to place a statement on the record regarding same; painted a negative picture of Plaintiff in front of Plaintiff's children; failed to take action when notified that the children were not attending reunification therapy; and arbitrarily and capriciously refused to consider a therapist's findings and recommendations.  (Compl. ¶¶ 64-73.)

It is alleged Judge James Ferrelli: improperly claimed he was without jurisdiction to rule on a previous court order or allow Plaintiff visitation because the ruling was pending on appeal; refused to enforce Plaintiff's visitation rights upon a renewed motion that he granted in February 2020; caused Plaintiff to unnecessarily expend additional sums of money for the extra year it took to ultimately obtain relief on the visitation motion; never held Plaintiff's ex-wife accountable for providing false phone numbers to prevent Plaintiff from communicating with the children via telephone; and,

discriminated against Plaintiff and denied him due process on the basis of his race. (Compl. ¶¶ 74-75, 77-81.)

With respect to Judge Edward Hoffman, Plaintiff claims he: continued the conduct of the previous judges, ordered therapy at Plaintiff's expense despite Lauralie Lewis's noncompliance with previous court orders regarding same; and, continuously refused to enforce Plaintiff's visitation and custody rights.  (Compl. ¶¶ 83-86.)

Finally, Plaintiff alleges Judge Hoffman's wrongful actions were committed under the oversight of Presiding Judge Richard J. Nocella.  (Compl. ¶ 85.)

As part of his claims against Judicial Defendants, Plaintiff avers the Family Court: violated his rights to visitation; failed to enforce his visitation rights; caused parental alienation; and, denied access to transcripts and audio recordings. (Compl. ¶¶ 35-36, 38, 41, 45, 48.)  Part and parcel of the allegations against "Family Court," is alleged wrongdoing by Defendants Glenn A. Grant, J.A.D., Acting Administrative Director of the Courts of the State of New Jersey, and David Tang, Chief of the Family Practice Division.  (Compl. ¶¶ 4-5.) Plaintiff is suing both Defendants in their official capacities, claiming liability for actions done under color of state law. In particular, Plaintiff claims both individuals were entrusted to uphold the constitutional rights of Plaintiff and while

acting within the scope of their duties, failed to do so by depriving him of due process throughout the Family Court proceedings.  (Compl. ¶¶ 4-5, 97.)

Judicial Defendants have filed the instant Motion to Dismiss, in which they raise numerous grounds for dismissal.[2] However, the immunity grounds for the motion are dispositive and render the remaining arguments moot.  (ECF No. 17-1 at 34-38, 43-45.)  Plaintiff opposes said Motion, arguing in pertinent part that Judicial Defendants are not entitled to immunity because he is only seeking declaratory and injunctive relief (ECF No. 27 at 17-18) and that "[t]he Judiciary Defendants are persons that may be sued for injunctive relief as a person under §1983 because such an action is not treated constitutionally as

---

[2] Specifically: (1) failure to state a claim for failure to identify any promulgated rule or procedure that is unconstitutional; (2) no case or controversy exists between a sitting judge and a litigant when the litigant challenges the constitutionality of statutes or rule; (3) the judiciary defendants judges are entitled to absolute judicial immunity; (4) the instant action is barred by res judicata; (5) this court lacks jurisdiction to issue orders regarding state-court custody determinations; (6) Plaintiff's complaint is barred by the two year statute of limitations; (7) Presiding Judge Nocella, Judge Hoffman, Judge Tarantino, Judge Breland, Judge Ferrelli, Administrative Director Grant, and Tang are not "persons" amenable to suit under 42 U.S.C. § 1983 and have sovereign immunity from claims against them; (8) Plaintiff has not stated a plausible claim for declaratory relief; and (9) this Court is required to abstain under the Rooker-Feldman Doctrine or based on Younger abstention.  (ECF No. 17-1.)

an action against the State for Eleventh Amendment purposes."
(ECF No. 27 at 23.)

## DISCUSSION

### I.   Subject Matter Jurisdiction

This Court has subject matter jurisdiction over Plaintiff's
federal claims pursuant to 28 U.S.C. § 1331.  This Court may
exercise supplemental jurisdiction over Plaintiff's state law
claims under 28 U.S.C. § 1367.

### II.   Standard of Review

When considering a motion to dismiss a complaint for
failure to state a claim upon which relief can be granted
pursuant to Federal Rule of Civil Procedure 12(b)(6), a court
must accept all well-pleaded allegations in the complaint as
true and view them in the light most favorable to the plaintiff.
Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005).  A pleading
is sufficient if it contains "a short and plain statement of the
claim showing that the pleader is entitled to relief."  Fed. R.
Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to
dismiss does not need detailed factual allegations, a
plaintiff's obligation to provide the 'grounds' of his
'entitle[ment] to relief' requires more than labels and
conclusions, and a formulaic recitation of a cause of action's

elements will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citation omitted).

To determine the sufficiency of a complaint, a court must take three steps:

> First, the court must tak[e] note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Third, whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 675, 679 (2009) (alterations, quotations, and other citations omitted).

A court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at 570).

III. **Analysis**

    A. **Immunity**

        1. **Judicial Immunity**

    Judicial Defendants Nocella, Hoffman, Tarantino, Breland and Ferrelli move to dismiss Plaintiff's Complaint on the basis of absolute judicial immunity.  (ECF No. 17-1 at 22-26.)

    This Court recognizes:

> "It is a well-settled principle of law that judges are generally 'immune from a suit for money damages.'" Figueroa v. Blackburn, 208 F.3d 435, 440 (3d Cir. 2000) (quoting Mireles v. Waco, 502 U.S. 9, 11, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991)). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority[.]" Stump v. Sparkman, 435 U.S. 349, 356, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978). See also Gallas v. Supreme Court of Pa., 211 F.3d 760, 769 (3d Cir. 2000) ("[I]mmunity will not be lost merely because the judge's action is 'unfair' or controversial."). "[Judicial] immunity is overcome in only two sets of circumstances." Mireles, 502 U.S. at 11. "First, a judge is not immune from liability for nonjudicial acts, i.e., actions not taken in the judge's judicial capacity." Id. "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." Id. at 12.

Dean v. Lenart, No. 21-6315, 2022 U.S. Dist. LEXIS 108272, at *4-5 (June 17, 2022); see also Azubuko v. Royal, 443 F.3d 302, 303 (3d Cir. 2006) ("A judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for his judicial acts."); Jenkins v. Young, Civil Action No. 13-2466, 2014 U.S. Dist. LEXIS 38823, at *11-12 (D.N.J. March 24, 2014) ("There are only two exceptions to the doctrine

of judicial immunity. The first exception is where a judge engages in nonjudicial acts . . . The second exception involves actions that, though judicial in nature, are taken in the complete absence of all jurisdiction.") (cleaned up).

Additionally, "[i]n determining whether an act qualifies as a 'judicial act,' courts look to 'the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectation of the parties, i.e., whether they dealt with the judge in his judicial capacity.' Stump, 435 U.S. at 362." Crymes v. Wild, No. 20-cv-7239, 2020 U.S. Dist. LEXIS 243554, at *4 (Dec. 29, 2020).

In this case, Plaintiff does not make any claim that Judicial Defendants acted without jurisdiction.  Instead, he alleges Judicial Defendants presided over his case in a manner that deprived him of his constitutional rights, therefore he seeks declaratory relief so they "may not institute arbitrary and capricious supervised child visitation restrictions upon a parent when there is no credible evidence of imminent or actual abuse and neglect of that child by the parent."  (Compl. First Count ¶ A.)  Plaintiff further seeks a declaration "that a parent has a Constitutional Right to a timely hearing with a full and complete record upon the application to a family court to assert their rights of visitation with their children." (Compl. First Count ¶ C.)   Finally, Plaintiff seeks injunctive

relief in the form of "rule[s] of procedure to guarantee that
parents receive fair and timely hearings concerning their rights
of visitation with their children consistent with the due
process." (Compl. Second Count ¶ B.)

The Third Circuit has opined that:

> While the Supreme Court held in <u>Pulliam v. Allen</u>, 466
> U.S. 522, 540-42, 104 S. Ct. 1970, 80 L. Ed. 2d 565
> (1984), that judicial immunity was not a bar to claims
> for injunctive or declaratory relief under § 1983,
> Congress amended § 1983 in 1996 as part of the Federal
> Courts Improvement Act to provide that "in any action
> brought against a judicial officer for an act or
> omission taken in such officer's judicial capacity,
> injunctive relief shall not be granted unless a
> declaratory decree was violated or declaratory relief
> was unavailable." See <u>Brandon E. ex rel. Listenbee v.</u>
> <u>Reynolds</u>, 201 F.3d 194, 197 (3d Cir. 2000).
> [Plaintiff] does not argue that the statutory
> exceptions set out in this provision should apply, and
> we agree with the District Court's determination that
> the challenged actions of the judges of the Court of
> Common Pleas fell within the range of judicial action.

<u>Chadwick v. Court of Common Pleas</u>, 244 F. App'x 451, 455 (3d
Cir. 2007); <u>see also Malhan v. Katz</u>, 830 F. App'x 369, 370 (3d
Cir. 2020) ("A § 1983 action for declaratory or injunctive
relief that challenges the constitutionality of either a state
statute or policy may not be brought against a judge who acts
[in an adjudicatory capacity] as a neutral and impartial arbiter
of [the law]. Judges act in an adjudicatory capacity when they
have no personal or institutional stake on either side of [a]

. . . controversy, have played no role in [a] statute's enactment, and have not initiated its enforcement.") (cleaned up).

In this case, Plaintiff similarly does not allege Judicial Defendants violated a declaratory decree or that declaratory relief was unavailable to him.  Instead, this Court finds that at the heart of Plaintiff's allegations lies the assertion he was wrongfully deprived of his visitation rights for a minimum of three consecutive years as a result of improper judicial rulings by Judge Tarantino and continued acceptance of those rulings by the other named judges.  Inasmuch as issuing and interpreting rulings — correctly or incorrectly — is a function normally performed by judges, this Court concludes the acts alleged by Plaintiff constitute judicial acts.  See Stump, 435 U.S. at 362; see also Conklin v. Anthou, 495 F. App'x 257, 263 (3d Cir. 2012) ("With regard to the defendant judges, judicial immunity extends to judicial officers, even if their actions were 'in error, w[ere] done maliciously, or w[ere] in excess of [their] authority,' unless the officers acted in clear absence of all jurisdiction.  The complained-of acts were clearly performed by these defendants in their roles as judges, and the alleged procedural errors identified by [Plaintiff] do not abrogate judicial immunity.").

To that end, with the exception of Judge Nocella, the named judges ruled on Plaintiff's motions as part of their duties as presiding officers — each at different points in time — of Plaintiff's custody case.  See Hoyle v. Porto, Civil Action No. 14-5726, 2014 U.S. Dist. LEXIS 145770, at *3-4 (Oct. 10., 2014) ("Here, the Complaint relies on judicial acts as the basis for the claims of discrimination [and] the actions taken by [the presiding judge] were actions taken squarely within the judge['s] official capacity. . . . Inasmuch as [P]laintiff[] did not allege that a declaratory decree was violated or that declaratory relief was unavailable, [his] claims for injunctive relief are barred.") (cleaned up); see also See English v. Kaplan, Civil Action No. 18-01617, 2023 U.S. Dist. LEXIS 15967, at *17 (D.N.J. Jan. 31, 2023) ("[Plaintiff's allegations against [the judges] concern erroneous rulings which were allegedly based entirely on . . . 'false statements made by the Attorneys.' These allegations also challenge actions taken in the Judicial Defendants' judicial capacity, and thus fail to pierce judicial immunity.) (cleaned up).

With regard to Judge Nocella, Plaintiff alleges the following:

> - "Defendant, Richard J. Nocella (hereinafter referred to at times as "Defendant" or "Nocella"), is the Presiding Judge, New Jersey Superior Court, Family Division, Burlington County, and is sued in his official capacity, and is liable for his actions

done under color of state law. This Defendant is
entrusted to protect the Constitutional rights of
those he encounters and at all times relevant hereto
was acting within the scope of his duties and
authority, under color or title of state law
supervised or controlled one or more of the
Defendants herein, or acted in concert with one or
more of the Defendants[]" (Compl. ¶ 6);

- Defendant Judge Edward W. Hoffman, *under the
  oversight of Presiding Judge Richard J. Nocella*, has
  continuously refused to enforce Plaintiff's rights
  of custody and visitation with his children despite
  Plaintiff's numerous meritorious applications to the
  Family Court, the fact that Plaintiff poses no risk
  of harm to the children, and that he is in fact a
  fit parent[]" (Compl. ¶ 85) (emphasis added); and,

- "Defendants Glenn A. Grant, J.A.D., David Tang,
  Richard J. Nocella, and Edward Hoffman are charged
  with the responsibility and duty to abide by
  Constitutional Due Process of Law in family court
  proceedings involving the rights of parents to visit
  with their children." (Compl. ¶ 97.)

Just as with allegations against judges who were personally
involved in the conduct complained of, a plaintiff must
"properly plead[] that [a judge acting in his or her supervisory
manner] violated a[] declaratory decree or that declaratory
relief is unavailable" in order to overcome judicial immunity.
Welch v. United States, Civil Action No. 21-10866, 2021 U.S.
Dist. LEXIS 197154, at *8-9 (D.N.J. Oct. 13, 2021).  Plaintiff
here makes no such allegations.  Moreover, to the extent
Plaintiff seeks declaratory judgment in the instant matter,
"[d]eclaratory judgment is inappropriate solely to adjudicate
past conduct.  Nor is declaratory judgment meant simply to

17

proclaim that one party is liable to another." Id. at *9.  A

reading of Plaintiff's Complaint in toto clearly demonstrates

these two objectives are exactly what he seeks to achieve.

Inasmuch as the foregoing allegations fail to demonstrate

any involvement by Judge Nocella in Plaintiff's custody matter

other than Plaintiff's blanket assertion that in his role as

Presiding Judge, Judge Nocella had oversight of Judge Hoffman,

Judge Nocella is similarly entitled to absolute immunity.

Finally, without providing any facts from which to infer

misconduct, Plaintiff summarily includes Defendants Grant and

Tang in his requests for relief.  Both individuals held

administrative roles within the court.  Specifically, "Defendant

Glenn A. Grant, J.A.D. . . . the Acting Administrative Director

of the Courts of the State of New Jersey, is sued in his

official capacity[.]"  (Compl. ¶ 4.)  "Defendant[] David Tang

. . . Chief of the Family Practice Division within the

Administrative Director [sic] of the Courts of the State of New

Jersey, is sued in his official capacity[.]"  (Compl. ¶ 5.)

Plaintiff alleges both Defendants "are charged with the

responsibility and duty to abide by Constitutional Due Process

of Law in family court proceedings involving the rights of

parents to visit with their children."  (Compl. ¶ 97.)  He

further alleges "[t]his responsibility includes implementing

judicial proceedings which are determined based upon the rule of

law and competent evidence with a full and fair opportunity to
be heard in a court of record, and not which are determined
arbitrary and capriciously[]" and that "[t]hese Defendants have
_failed_ to abide by and implement such proceedings as a matter of
due process _as to the Plaintiff_ and those similarly situated to
the Plaintiff."  (Compl. ¶¶ 98-99) (emphasis added).

    Preliminarily, this Court again notes the fact that in his
use of the past tense, Plaintiff is effectively challenging the
propriety of his underlying State court custody outcome.

    Notwithstanding, it is well settled that when a defendant
is sued "solely for actions taken in his role as Court
Administrator . . . he is entitled to the protection of quasi-
judicial immunity."  Conklin v. Anthou, 495 F. App'x 257, 264
(3d Cir. 2012) (citations omitted); see also Kunkle v. Naugle,
660 F. App'x 132, 135 n.2 (3d Cir. 2016) ("Court Administrator
and Prothonotary . . . are entitled to quasi-judicial
immunity."); Wicks v. Lycoming County, 456 F. App'x 112, 115 (3d
Cir. 2012) (finding defendant was "simply carrying out part of
his official duties as court administrator, and thus he is
shielded from liability by the doctrine of quasi-judicial
immunity."); Baquero v. Mendoza, No. 18-cv-15081, 2019 U.S.
Dist. LEXIS 131764, at *11 (D.N.J. Aug. 6, 2019)("[D]efendants
carried out tasks as part of their job responsibilities working
for the New Jersey state courts, and therefore ought to be

19

entitled to absolute quasi-judicial immunity.") (citations omitted).[3]

Based on the foregoing, all Judicial Defendants are immune from suit and are entitled to dismissal of the claims against them with prejudice.

### 2.   Sovereign Immunity – "Persons" Under § 1983

Judicial Defendants alternatively seek dismissal on the basis of sovereign immunity.  (ECF No. 17 at 43-45.)  Plaintiff argues the Judicial Defendants are "persons" that may be sued for injunctive relief under Section 1983.  (ECF No. 27 at 23-24.)

However,

> Section 1983 imposes liability on "[e]very person, who, acting under color of any statute, ordinance, regulation, custom, or usage, of any State" subjects a person to a deprivation of certain rights. 42 U.S.C. § 1983 (emphasis added). "[N]either a State **nor its officials acting in their official capacities** are 'persons' under § 1983." Hafer v. Melo, 502 U.S. 21, 26, 112 S. Ct. 358, 362, 116 L. Ed. 2d 301 (1991) (quoting Will, 491 U.S. at 71, 109 S. Ct. at 2312). An action against a State agent in that agent's official capacity is considered an action against the State itself, not one against a "person." Kentucky v. Graham, 473 U.S. 159, 165, 105 S. Ct. 3099, 3104, 87 L. Ed. 2d 114 (1985).

---

[3] Notably, Defendants Grant and Tang were recently granted immunity in another matter, on this same basis.  Wolf v. New Jersey, No. 19cv16979, 2023 U.S. Dist. LEXIS 36903 (D.N.J. March 6, 2023).

Rashduni v. Melchionne, Civ. No. 15-8907, 2016 U.S. Dist. LEXIS 97548, at *5 (D.N.J. July 26, 2016)(emphasis added); see also Conklin v. Anthou, 495 F. App'x 257, 263 (3d Cir. 2023) ("[C]laims against the defendants in their official capacities, which are in essence claims against the [State], are barred by Eleventh Amendment immunity.").

To that end,

> The law is clear: "[t]he Eleventh Amendment of the United States Constitution protects a state or state agency from a suit brought in federal court by one of its citizens regardless of the relief sought, unless Congress specifically abrogates the state's immunity or the state waives its own immunity." Thorpe v. New Jersey, 246 F. App'x 86, 87 (3d Cir. 2010); see also Edelman v. Jordan, 415 U.S. 651, 663, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974). Congress has not abrogated the state's sovereign immunity with respect to § 1983. See id. ("Section 1983 does not abrogate states' immunity."). "And New Jersey has neither consented to suit nor has it waived its Eleventh Amendment immunity." Thorpe, 246 F. App'x at 87. Further, state courts and state court judges acting on behalf of the state are protected by the state's sovereign immunity. See Mosher v. New Jersey, No. 06-2526, 2007 U.S. Dist. LEXIS 26311, 2007 WL 1101230, at *2 (D.N.J. Apr. 10, 2007) (finding that state court judges sued for actions taken in their official capacity "may 'cloak' themselves in the state's sovereign immunity under the Eleventh Amendment"). Accordingly, the claims against the Judicial Defendants, the State of New Jersey and former Attorney General Chiesa will be dismissed from this litigation.

Jenkins v. Young, 2014 U.S. Dist. LEXIS 38823, *14-15

Therefore,

> The Eleventh Amendment to the United States Constitution protects an unconsenting state or state agency from a suit brought in federal court,

21

regardless of the relief sought. See MCI Telecomm. Corp. v. Bell Atl. Pennsylvania, 271 F.3d 491, 503 (3d Cir. 2001). This immunity does not extend to individual state officers sued in their individual capacities for prospective injunctive or declaratory relief to remedy ongoing violations of federal law. See id.

Capogrosso v. Supreme Court of N.J., 588 F.3d 180, 185 (3d Cir. 2009)(concluding "[i]nasmuch as [Plaintiff] sought relief against the [Advisory Committee On Judicial Conduct] and its employees only in their official capacities, dismissal of her claims was appropriate.").  In this case, Plaintiff has sued all Judicial Defendants in their official capacities.  Because said Defendants have not been sued in their individual capacities, the inquiry ends there and Plaintiff's § 1983 claim fails.

### 3. Amendment

Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading . . . with the opposing party's written consent or the court's leave."  Leave to amend is to be freely granted unless there is a reason for denial, "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962); see also Arthur v. Maersk, 434 F.3d 196, 204 (3d. Cir. 2006) ("Among the factors

that may justify denial of leave to amend are undue delay, bad faith, and futility.").

Here, Plaintiff does not seek leave to amend. However, even if leave to amend had been sought, "given the plain bar of judicial immunity . . . amendment would [be] futile." <u>Kasperski v. Katz</u>, No. 22-1792, 2022 U.S. App. LEXIS 35863, at *2 (3d. Cir. Dec. 29, 2022)(citing <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir 2002)); <u>see also</u> <u>English v. Kaplan</u>, Civil Action No. 18-01617, 2023 U.S. Dist. LEXIS 15967, at *17 (D.N.J. 2023)("In sum, treating all allegations as true, they amount to attacks on court decisions that cannot overcome judicial immunity. Because amending the Complaint would be futile with respect to judicial immunity, the Judicial Defendants are dismissed from this matter with prejudice.") (citing <u>Lake v. Arnold</u>, 232 F.3d 360, 373 (3d Cir. 2000)).

## CONCLUSION

For the reasons set forth above, the court will grant Judicial Defendants' Motion to Dismiss (ECF No. 17) in its entirety. Moreover, because the bars to suit of judicial and sovereign immunity are absolute defenses, Plaintiff's claims against the Judicial Defendants will dismissed with prejudice.

An appropriate Order will accompany this Opinion.

Dated: <u>April 21, 2023</u>          <u>/s/ Noel L. Hillman</u>
Camden, New Jersey          Noel L. Hillman, U.S.D.J.